**UNITED STATES of America,
Plaintiff,**

**v.**

**Duane Theodore WALLEN, Defendant.**

**No. 4–70 CR. 34.**

United States District Court,
D. Minnesota,
Fourth Division.

July 2, 1970.

Neal J. Shapiro, Asst. U. S. Atty., for plaintiff.

Kenneth E. Tilsen, St. Paul, Minn., for defendant.

NEVILLE, District Judge.

Defendant was indicted under the Selective Service Act, 50 App. U.S.C. § 462, for having failed and neglected to comply with an order of his local board to report for and submit to induction into the Armed Forces of the United States. He brings this motion to dismiss on the ground that he has been denied due process of law in that he was not granted a meaningful appeal from the local board's classification of I–A as provided by the statutes, laws, regulations and the Constitution of the United States.

After his indictment defendant requested and received from the office of the United States Attorney the minutes of the Minnesota Selective Service Appeal Board for February 15, 1969, at which meeting defendant's case was considered and his I–A classification made by his local board was affirmed. A copy of these minutes are attached to defendant's motion and show that a two hour meeting was held on a Saturday morning commencing at 9:30 A.M. at the Appeal Board office. All members were present. The first business was the approval of the minutes of the previous meeting. Defendant's case was 58th on the agenda of a total of 122 appealed cases which were considered and acted upon at the meeting. In the great majority of the cases, in fact all but approximately 10, the vote was 5–0; others were 4–1 or 3–2. Most, if not all, were an affirmation of the classification the local board had established. Defendant's status as I–A was reaffirmed or re-established by a vote of 5–0. The meeting adjourned at 11:30 A.M. There was thus a total of two hours devoted to the meeting at which 122 cases were considered, voted and acted upon. Averaged out, the total time consumed in studying, deliberating and voting on each case is less than a minute, actually 59.01 seconds. Defendant's file is reasonably thick, containing 50 sheets of paper or more including a number of documents, letters, etc. from persons purporting to testify to his sincerity as a conscientious objector. Even though other files may not be as thick as is defendant's it seems to the court impossible that the board could have acted on any of the matters and cases before it in two hours with any detailed study or consideration.

 There is of course no evidence as to how much actual time was spent on defendant's appeal. To the extent that more than 59.01 seconds was spent, less was of course spent on the other cases. The government called the Deputy State Director of Selective Service as a witness. He testified that he is familiar with appeals and appeal procedure; that a résumé or summary of all appeal files and appealed cases is made by the appeal board's clerk and delivered to each member of the board in advance of the meeting. The file itself is said to be available to members of the Appeal Board on request. After the meeting, the résumé is destroyed and thus the résumé of this defendant's case is not available and could not be inspected by the court or counsel. The government calls attention to the presumption of regularity in governmental procedures. Greer v. United States, 378 F.2d 931 (5th Cir. 1967). This is merely a presumption, however, and disappears upon production of contrary and rebutting evidence. Also the contention is made that on the merits and in view of defendant's file and his record he is not prejudiced because he should not have received a conscientious objector classification in any event. The court does not opine on this contention *de novo*, but does not believe it is an adequate answer to defendant's position.

 It does not require lengthy argument to this court to convince that a 59 second appeal is not a meaningful appeal proceeding. It is almost a routine "rubber stamp" operation. It is a hearing or

meeting at which, under the present regulations, defendant is not entitled to be present. It was in its final analysis the way it was obviously handled in this case, in reality but an appeal to the clerk of the appeals board only; for he or she is the one who makes the résumé, who selects the matters to be emphasized and who omits what he or she may consider immaterial matters.

The question then really is whether where the law provides an appeal, it is necessary that the appeal be adequate and provide a reasonable opportunity for review. It seems to the court that a 59.-01 second review on a calendar involving 122 cases which are disposed of in a two-hour period cannot be anything but a cursory review, relying largely if not solely on the résumé and recommendation made by the appeal board's clerk and is not a situation where the five individual board members exercise their own considered and independent judgment. Such an appeal does not afford defendant the rights which Congress must have intended he would have as a Selective Service registrant when it provided for an appeal and a review by a five member appeal board, generally comprised of prominent civilian citizens selected from a cross-section of the community. The proceeding is offensive to the concept of due process and the indictment in defendant's case should be dismissed for failure of the appeal board to have afforded defendant meaningful rights as guaranteed under the due process clause of the Fifth Amendment and Fourteenth Amendment. The court is not unaware that the Appeal Board is comprised of unselfish, loyal, volunteer citizens who are doing a patriotic service and does not mean to impugn their integrity or high purpose. Nevertheless the above result seems inescapable.

It is manifestly apparent upon analysis of the numerous Selective Service cases that the courts have uniformly held that the concept of fairness and the guarantee of due process of law are implicit in the Selective Service Act and the Regulations promulgated thereunder.

The right of any registrant to a review of his classification given by a local board is absolute. United States v. Dyer, 390 F.2d 611 (4th Cir. 1968). The procedures for effectuating this appeal are set forth in the Selective Service Regulations, 32 C.F.R. § 1625, et seq.

In those situations where a registrant has been entitled to a hearing pursuant to the regulations the Supreme Court has held that such hearing must be a meaningful one and "no sham substitute will meet this requirement." United States v. Nugent, 346 U.S. 1, 7, 73 S.Ct. 991, 995, 97 L.Ed. 1417 (1953). An examination of the regulations will lend credence to this view.

32 C.F.R. § 1604.22 provides in part:

" * * * If the number of appeals sent to the board becomes too great for the board to handle without undue delay, additional panels of five members similarly constituted shall be appointed to the board by the President * * * * "

Implicit within this regulation is the desire for a fair and deliberate review of each registrant's appeal and when such becomes impossible due to a large number of appeals the solution is not to "rubber-stamp" all of the appeals without any meaningful consideration but rather to utilize the above regulation in obtaining additional panels to ease the burden.

32 C.F.R. § 1626.23 states in part:

"The appeal board will carefully check each file to determine whether all steps required by the regulations have been taken, whether the record is complete, and whether the information in the file is sufficient to enable it to determine the registrant's classification."

It is indeed difficult to imagine that this regulation could itself be satisfied in a period of 59 seconds. The Regulation reflects the overall policy of fairness, deliberateness and thoroughness, which is present throughout the Selective Service Act and its regulations.

It has been held that a registrant is entitled to "a full and fair disposition of his contentions at every level of operation of the Selective Service System. * * *" Mintz v. Howlett, 207 F.2d 758, 762 (2nd Cir. 1953).

Failure to conduct a hearing required reversal of a conviction for refusal to submit to induction in Bates v. United States, 348 U.S. 966, 75 S.Ct. 529, 99 L. Ed. 753 (1955). In Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L. Ed. 467 (1955), the Supreme Court held that pursuant to 50 U.S.C. App. § 456(j) the registrant had the right to receive a copy of the report submitted by the Justice Department and also he must be given the opportunity to rebut the recommendation when it comes before the appeal board. In making its determination the Court opined that this type of fairness was implicit in the Selective Service Act and Regulations promulgated thereunder and furthermore that its decision was warranted when "viewed against our underlying concepts of procedural regularity and basic fair play. * * *" 348 U.S. at 412, 75 S.Ct. at 412.

Even though 50 U.S.C. App. § 456(j) was amended in 1967 so as to eliminate an appeal to and hearing by a member of the Department of Justice in conscientious objector cases, the courts have continued to adopt the views expressed by the Supreme Court in Gonzales v. United States, *supra*, as to the due process requirements at the level of the appeal board. In Nevarez Bengoechea v. Micheli, 295 F.Supp. 257 (D.Puerto Rico 1969), the court held that copies of statements made by the State Director of the Selective Service System informing the Appeal Board that the registrant's occupation was not considered "critical" should have been given to the registrant so that he could rebut them before the Appeal Board. The court acknowledged the fact that 50 U.S.C. App. § 456(j) as construed in *Gonzoles, supra,* concerned conscientious objectors but proceeded to state in part:

" * * * the principles involved in the concepts of a fair hearing, procedural regularity and basic fair play which the Supreme Court applied in Gonzoles are so outstanding that they have general application to all cases with analogous situations." 295 F. Supp. at 259.

In United States v. Zasadni, 206 F. Supp. 318, 321 (W.D.Pa.1962), the court noted that "there must be a 'fair and just' compliance with the provisions of the [Selective Service] Act and the applicable regulations * * *" in order that the registrant is afforded due process of law.

The Court of Appeals for the Eighth Circuit long has held that Draft Board proceedings are quasi-judicial and as such must conform to basic principles of due process of law. Gibson v. Reynolds, 172 F.2d 95, 98 (8th Cir. 1949). In the more recent case of United States v. Cummins, 425 F.2d 646 (8th Cir. 1970), the court was faced with a very similar situation to that in Nevarez Bengoechea v. Micheli, *supra,* similarly held that a registrant must be informed of any adverse statements placed in his file by the State Director upon his appeal. Thus the Eighth Circuit consistently has taken the position that the Selective Service Act must be administered in accordance with basic concepts of due process and fairness. While the instant case appears to present a novel question upon which there is no direct authority, this court holds that the review by the Appeal Board had in this case is not consistent with the concepts of fairness and due process as required by the Selective Service Act and the cases cited herein.

A separate order of dismissal has been entered.