**UNITED STATES of America,**
**Plaintiff,**

v.

**Leslie Robert MALONE, Defendant.**

**Crim. No. 71–976.**

United States District Court,
N. D. California.

Jan. 28, 1972.

James L. Browning, Jr., U. S. Atty., Robert E. Carey, Jr., Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Gary A. Patton, Santa Cruz, Cal., for defendant.

OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND FINDING DEFENDANT GUILTY

GEORGE B. HARRIS, District Judge.

Defendant Leslie Robert Malone was indicted for refusal to submit to induction into the Armed Forces of the United States, in violation of 50 U.S.C.App. § 462. His case was thereafter tried to the court without a jury, and the matter was taken under submission for decision by the court following briefing by the parties.

Defendant's Selective Service File in evidence reveals the following pertinent facts.

Defendant registered with his local board in San Jose, California, on February 14, 1968. On September 11, 1968, defendant was classified I–A. He thereafter applied for classification into II–S based upon his full-time attendance as a student at San Diego State College. On November 6, 1968, defendant's local board received a student certificate from San Diego State College superseding an earlier form sent by the college which erroneously indicated that defendant was no longer enrolled there. On April 2, 1969, defendant was given a II–S classification, and on September 9, 1969, this classification was continued until September 30, 1970.

By letter dated August 8, 1970, defendant wrote his local board requesting that his classification be changed to that of conscientious objector. On August 25, 1970, defendant's local board mailed him a Conscientious Objector Form

(Selective Service Form 150). Defendant returned the completed form to his local board on September 25, 1970. On the same day the local board received a letter from defendant's mother supporting his claim for conscientious objector status.

On November 12, 1970, the local board reclassified defendant I–A. On December 7, 1970, the local board mailed to defendant a notice of his classification and a notice of his appellate rights.

On January 8, 1971, the local board mailed defendant an order to report for a physical examination on January 21, 1971. On January 12, 1971, the local board received a letter from defendant's father by which he returned the order to report for a physical examination mailed on January 8, 1971, and indicated that defendant was on a camping trip in the mountains and could not be reached by telephone, mail, or messenger. Defendant's father also said in the letter that defendant was expected to return by January 29 and was scheduled to report for his first class of the spring semester at Cabrillo College in Aptos, California, on February 1. Defendant's father also requested that the local board reschedule defendant's physical examination for a later date and more convenient location.

On January 21, 1971, defendant did not report as ordered for his physical examination. On February 19, 1971, the local board mailed defendant an order to report for induction on March 24, 1971.

Defendant wrote to the State Director of Selective Service on March 4, 1971, claiming that he was wrongly classified and asking for relief. On March 11, 1971, Major Albert A. Madsen, Headquarters Operations Officer for the California Headquarters of the Selective Service, wrote defendant on behalf of the State Director. The text of his letter is as follows:

> With reference to your letter of March 4, 1971, we have reviewed your selective service file and we are of the opinion you are properly classified.

In view of this circumstance, no intervention by this Headquarters is indicated.

On March 24, 1971, defendant appeared at the induction center and was given a physical examination. He was found acceptable, but refused to submit to induction.

### Discussion

Defendant has raised several defenses to the offense charged here. Each of such defenses will be discussed below.

1. *I–O Classification and the Exhaustion Doctrine*

■ Defendant contends that his local board denied his claim for classification as a conscientious objector (I–O) without basis in fact. The Government has not commented on the substantive merits of defendant's claim, but argues instead that defendant is barred from challenging here his denial of conscientious objector classification because he did not exhaust his administrative remedies within the Selective Service System by appealing the November 12, 1970, classification into I–A. The Government concludes that since no "exceptional circumstances" are shown justifying defendant's failure to appeal, the exhaustion doctrine bars his challenge to the claimed erroneous denial of conscientious objector status.

A review of the pertinent case law convinces the court that the exhaustion doctrine is properly invoked here to bar defendant's challenge to the denial of his claimed conscientious objector status. In McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), the Supreme Court held that the registrant therein could raise as a defense his local board's erroneous denial of his claim for exemption as a "sole surviving son" despite his failure to exhaust his administrative remedies. The Court concluded that the claim for exemption then before it was based solely on statutory interpretation and did not require any expertise or discretion on the part of the Selective Service System. 395 U.S. at 197–198, 89 S.Ct. 1657, 23

L.Ed.2d 194. The Court did not address itself to a general policy concerning claims for conscientious objection, but did say as follows in a footnote:

[Conscientious objector claims] would appear to be examples of questions requiring the application of expertise or the exercise of discretion. In such cases, the Selective Service System and the courts may have a stronger interest in having the question decided in the first instance by the local board and then by the appeal board, which considers the question anew. 32 CFR § 1626.26. The Selective Service System is empowered by Congress to make such discretionary determinations and only the local and appeal boards have the necessary expertise. [Citation omitted.] *Id.* at 198 n. 16, 89 S.Ct. at 1665.

In Lockhart v. United States, 420 F.2d 1143, 1145–1147 (9th Cir. 1969), the court discussed the *McKart* case and announced a general policy favoring the exhaustion requirement where the claim in question was for conscientious objector status. Exhaustion would not be required, however, when "exceptional circumstances" were present and justified the failure to use available administrative remedies.

The Supreme Court recently clarified its position on exhaustion in a case dealing with a registrant's claims for classification as a ministerial student or conscientious objector, McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). The Court stated that,

After *McKart* the task for the courts, in deciding the applicability of the exhaustion doctrine to the circumstances of a particular case, is to ask 'whether allowing all similarly situated registrants to bypass [the administrative avenue in question] would seriously impair the Selective Service System's ability to perform its func-

tions.' *Id.* at 484, 91 S.Ct. at 1568, 1569.

The Court concluded that unlike the statutory interpretation involved in *McKart*, the case before it in *McGee* required application of the exhaustion doctrine because the claims in question depended on the use of expertise by administrative bodies. *Id.* at 486, 91 S.Ct. 1565, 29 L.Ed.2d 47.

The *McGee* case is clear authority for applying the exhaustion doctrine to the facts of the instant case. *See also* United States v. Houston, 433 F.2d 939, 940–941 (2d Cir. 1970), cert. den., 403 U.S. 910, 92 S.Ct. 2210, 29 L.Ed.2d 688 (1971). Defendant seeks to avoid this result by arguing that his request to the State Director for assistance either was itself sufficient exhaustion within the meaning of the doctrine or constituted an "exceptional circumstance" within the meaning of the Lockhart case, *supra.* Defendant's arguments here are without merit.

Major Albert J. Madsen, whose name and position are noted above, testified at defendant's trial that review by the State Director is not equivalent to nor a substitute for review by the state appeals board. Unlike local or appeals Boards, the State Director cannot classify. Defendant has cited no case to the court wherein such resort to the State Director has been found to be an adequate substitute for appeal to a state appeals board with respect to the application of the exhaustion doctrine.[1]

Next, defendant argues that there was present here an "exceptional circumstance" justifying his failure to appeal and thus preventing application of the exhaustion doctrine as a bar under Lockhart v. United States, *supra*—namely the local board's failure to send defendant a notice of classification "as soon as practicable" as required by 32 C.F.R. § 1625.12. Defendant contends that the mailing of the notice twenty-five days

---

1. *But cf.* United States v. Griffin, 324 F.Supp. 545 (E.D.Pa.1971) where the registrant's failure to appeal was cured where the National Director of the Selective Service System took an appeal for him.

after classification violated the regulation just cited.

Assuming *arguendo* that the "exceptional circumstance" rule remains viable even after the decision in McGee v. United States, *supra*, no such circumstance presents itself here by reason of the alleged violation of 32 C.F.R. § 1625.12. The court believes that there was substantial compliance with the regulation in this case.

Defendant relies on United States v. Davis, 413 F.2d 148 (4th Cir. 1969), but that case is not dispositive here. In *Davis*, a case decided before United States v. McGee, *supra*, the court held that an unsuccessful conscientious objector claimant need not have appealed his denial thereof in order to satisfy the exhaustion doctrine, because his local board had failed to advise him of the availability of an appeal agent as required by Local Board Memorandum 82. The court found such non-compliance to be an "exceptional circumstance" excusing the registrant's failure to appeal administratively. The court reached this conclusion on the theory that the Government was estopped from requiring that very procedure which the registrant should have been advised about. Clearly, such is not the situation in the instant case, and the court in *Davis* was careful to restrict its holding to the particular facts before it. 413 F.2d at 151. No court has extended *Davis* further, and the court declines to do so here.

Even were there not substantial compliance with the regulation here, the defendant cannot rely on the violation because he was not prejudiced thereby.

█ Certainly a national administrative agency, such as the Selective Service, must follow its own validly promulgated regulations. *See* United States v. Hayden, 445 F.2d 1365, 1371 (9th Cir. 1971); United States v. Wilbur, 427 F.2d 947, 948 (9th Cir. 1970), cert. den., 400 U.S. 945, 91 S.Ct. 250, 27 L.Ed.2d 250 (1970). It is likewise true, however, that procedural irregularity is not a defense to an offense such as that charged in the instant case unless it has resulted in prejudice to the defendant. See United States v. Nobile, 451 F.2d 1121, 1122 (9th Cir. 1971); United States v. Dannehy, 437 F.2d 341, 343 (9th Cir. 1971); Oshatz v. United States, 404 F.2d 9, 12 (9th Cir. 1968). The prejudice claimed here is that the local board's delay in mailing defendant a notice of classification discouraged him, and had he received notice earlier he might have appealed. Such delay is as consonant with possibly favorable action as unfavorable, however, and the court is not convinced by defendant's equivocal testimony at trial that he would in fact have acted differently had notice of his classification been sent him any earlier.

## 2. *Defendant's Pre-Induction Physical Examination*

█ Defendant's next contention is that he was not properly ordered for induction under the pertinent provisions of 32 C.F.R. § 1631.7. That regulation provides, *inter alia*, that only those men may be ordered to report for induction who are (1) classified I–A or I–A–O; (2) found acceptable for service; and (3) who have been mailed a Statement of Acceptability (DD Form 62) at least twenty-one days prior to the date set for induction. The regulation also has a proviso which was added by amendment on June 18, 1970 (3 U.S.Code Cong. & Admin.News, 1970 at p. 6259) which reads:

> *Provided,* That notwithstanding Part 1628 or any other provision of these regulations, when a registrant classified in Class I–A or Class I–A–O has *refused or otherwise failed to comply* with an order of his local board to report for and submit to an armed forces physical examination, he may be selected and ordered to report for induction even though he has not been found acceptable for service in the

Armed Forces and a Statement of Acceptability (DD Form 62) has not been mailed to him, and in such a case the armed forces physical examination shall be performed after he has reported for induction as ordered and he shall not be inducted until his acceptability has been satisfactorily determined: * * * [Emphasis added except for the word "provided."]

In the instant case defendant did not report for his first ordered pre-induction physical examination on January 21, 1971, because he was then away from home in the mountains and could not be reached in time. As a result, defendant's local board proceeded under the above-cited proviso to 32 C.F.R. § 1631.7 and did not order him for another physical examination prior to mailing him an order to report for induction. Instead, defendant was given his physical examination on the date of his ordered induction and there found acceptable.

The issue here is whether defendant's actions or inactions brought him within the proviso of 32 C.F.R. § 1631.7 so as to obviate the need for a physical examination prior to the date set for induction by that period of time specified in the first part of the regulation. More specifically, the question is whether defendant's non-attendance at his ordered physical examination on January 21, 1971, by reason of his absence, was a "failure to comply" such as makes operative the proviso in the regulation.

Defendant argues strenuously that the phrase "or otherwise failed to comply" requires some volitional or intentional activity on the part of the registrant. Where, as here, non-attendance at an ordered physical examination was not due to any willful or culpable activity on the part of the registrant, it cannot be said that he "failed to comply" with the order as those terms are used in the regulation. Defendant points to the salutary effect of requiring twenty-one days be-

tween the registrant's being mailed a Statement of Acceptability and his actual induction, and he contends that this policy should not be jeopardized where, as here, the registrant has done nothing to impede the operation of the Selective Service System or otherwise forestall his own induction.

The Government counters that the phrase "failed to comply" simply means failed to—that is, did not act in accordance with—the order to report for induction. The Government also claims that even if 32 C.F.R. § 1631.7 were not properly applied, the defendant suffered no prejudice thereby since his induction was not accelerated and it is not maintained that defendant would have received any different physical determination had he not been processed in accordance with the proviso of the regulation.

No authorities have been offered by either party which materially assist the court in its resolution of what may well be a question of first impression. A review of the general regulatory scheme of the Selective Service System as well as an examination of the probable reasons behind the amendment of 32 C.F.R. § 1631.7 convinces the court that the Government's interpretation should be adopted. See United States v. Fox, 454 F.2d 593 (9th Cir. Dec. 30, 1971). There is good reason why the Selective Service might dispense with a registrant's physical examination at a time in advance of his actual induction date even where the registrant has not culpably impeded his own processing. Moreover, the court is not unmindful of the disjunctive phrasing, "refused or otherwise failed to comply," which leads to the conclusion that the proviso intended to apply to non-volitional as well as volitional conduct.

3. *Student Deferment*

■ Defendant's final contention is that he was entitled to a student defer-

ment (classification I–S(c)) based upon the request therefor made by defendant's father in his letter to the local board dated January 12, 1971. Said letter indicated only that defendant was scheduled to report to his first class of the spring semester at Cabrillo College, Aptos, California, on February 1, 1971. No other information was put before the board concerning defendant's request for I–S(C) status and his local board never so classified him.

Defendant's local board acted properly in denying him classification into I–S(C). First, the applicable regulations require that the *registrant* must make the request for deferred student status. *See* United States v. Farrell, 443 F.2d 355, 356 (9th Cir. 1971), appeal pending, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93. This the defendant did not do.

■ Second, the burden is on the registrant to bring facts to the attention of the local board which would warrant granting him the classification requested. United States v. Lewis, 448 F.2d 1228, 1229 (9th Cir. 1971). *See also* United States v. Jenson, 450 F.2d 1258 (9th Cir. Oct. 28, 1971); United States v. Olson, 447 F.2d 1362, 1364 (9th Cir. 1971). This the defendant also did not do.

Third, and most pointedly, the Ninth Circuit has recently ruled that actual *enrollment* must be shown in order to sustain the granting of a I–S deferment. United States v. Bray, 445 F.2d 819, 821 (9th Cir. 1971). *See also* United States v. Gasca, 449 F.2d 1288 (9th Cir. 1971). Here defendant did not even allege such enrollment in college, let alone supply his local board with *facts* which would support such a showing.

### Conclusion

Accordingly, defendant's motion for judgment of acquittal is hereby denied. Defendant is found guilty of the offense charged in the indictment. It is so ordered.